UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────

FRANCIS COX,

                      Plaintiff,

          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                   Defendant.

───────────────────────────────

                         **REPORT AND
RECOMMENDATION**

                         11-CV-0032
(TJM/VEB)

## I. INTRODUCTION

In July of 2008, Plaintiff Francis Cox applied for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that he had been unable to work since July of 2002 due to physical and mental impairments.  The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff commenced this action by and through his attorneys, Olinsky & Shurtliff, Howard D. Olinsky, Esq., of counsel, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on July 7, 2008, alleging disability beginning on July 4, 2002. (T at 101-108, 150).[1]  Plaintiff's claim was denied initially and he requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York on March 16, 2010, before ALJ Elizabeth W. Koennecke.  (T at 23). Plaintiff, accompanied by his attorney, appeared and testified.  (T at 27-70).

On June 21, 2010, ALJ Koennecke issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act between the alleged onset date and the date of her decision. (T at 9-18).   The ALJ's decision became the Commissioner's final decision on December 4, 2010, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

Plaintiff, by and through his attorneys, timely commenced this action on January 10, 2011.  (Docket No. 1).  The Commissioner interposed an Answer on June 17, 2011. (Docket No. 8).  Plaintiff filed a Brief in support of his action on August 1, 2011. (Docket No. 11).  The Commissioner filed a Brief in opposition on October 4, 2011. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is recommended that the Commissioner's motion be

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

denied, Plaintiff's motion be granted, and this case be remanded for calculation of benefits.

## III. DISCUSSION

### A.   Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2006. The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 4, 2002, the alleged onset date.  (T at 11).

The ALJ concluded that Plaintiff had the following severe impairment, as defined under the Social Security Act: major depressive disorder. (T at 11).  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 12-13).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels.  The ALJ further found that Plaintiff could understand, carry out, and remember at least simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine

5

work setting. (T at 13-17).

The ALJ determined that Plaintiff could perform his past relevant work as a cab driver. (T at 17).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from July 4, 2002 (the alleged onset date) through June 21, 2010 (the date of the ALJ's decision). (T at 18).

As noted above, the ALJ's decision became the Commissioner's final decision on December 4, 2010, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

### 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. Plaintiff offers six (6) principal arguments in support of his position.  First, Plaintiff contends that the ALJ should have obtained a consultative examination.  Second, Plaintiff asserts that the ALJ improperly assessed the severity of his right ankle and knee impairments.  Third, Plaintiff argues that the ALJ failed to properly apply the treating physician's rule and should have concluded that his depression met the requirements of the impairment set forth at §12.04 of the Listings.   Fourth, Plaintiff contends that the ALJ's residual functional capacity assessment was not supported by substantial evidence. Fifth, Plaintiff challenges the ALJ's credibility determination.  Sixth, Plaintiff contends that the ALJ should have consulted a vocational expert. This Court will address each argument in turn.

### a.    Consultative Examination

The ALJ has discretion to order a consultative examination to further develop the evidentiary record. See Serianni v. Astrue, No. 6:07–CV–250, 2010 WL 786305, *5

(N.D.N.Y. Mar. 1, 2010) (citing <u>Hughes v. Apfel</u>, 992 F.Supp. 243, 248 (W.D.N.Y.1997) (citing 20 C.F.R. § 404.1517))). "Several courts have held . . . that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision." <u>Id.</u> (citations omitted).

Generally, the ALJ should order a consultative examination when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved." Id. (quoting <u>Matejka</u>, 386 F.Supp.2d at 209) (other citations omitted); <u>see also</u> <u>Cruz v. Shalala</u>, No. 94 Civ. 0929, 1995 WL 441967, *5 (S.D.N.Y. July 26, 1995).

However, the ALJ "is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination." <u>Id.</u> (citing <u>Cruz</u>, 1995 WL 441967, at *5). "Where a plaintiff suggests a possible mental impairment, but no treatment has been recommended or received, the ALJ must assess whether there is any evidence of work-related functional limitations resulting from the possible mental impairment." <u>Id.</u> (citing <u>Haskins v. Comm'r of Soc. Sec.</u>, No. 5:05-CV-292, 2008 WL 5113781, at *7, n. 5 (N.D.N.Y.2008)).

In the present case, Plaintiff argues that the ALJ should have ordered a consultative examination to assess his intelligence.  Plaintiff testified that he received special education services through the sixth grade, which he repeated. (T at 27-28).  He reported having a learning disability and taking remedial reading classes in high school (T at 241).  Dr. Shapiro, a psychiatric consultative examiner, opined that Plaintiff's intellectual functioning was "estimated to be in the borderline range" with a "general fund of information" that was "less than appropriate to experience." (T at 232).  Dr. Shapiro also indicated a diagnosis

of "[rule out] Borderline Intellectual Functioning." (T at 233).  In light of these findings, Plaintiff contends that the ALJ should have ordered a consultative examination to assess possible mental retardation.

This Court finds that the ALJ did not abuse her discretion in deciding not to order a consultative examination to assess Plaintiff's intelligence.  Although Plaintiff received some special education instruction in elementary school, he completed high school as part of a general education class. (T at 28, 230).  He was thereafter employed for various time periods, including employment as a gas station attendant, which required him to operate a cash register. (T at 28).  Dr. Farago, a treating provider from MidState Correctional Facility, described Plaintiff as being "of average intelligence." (T at 201).  An admission assessment performed in November of 2008 at Auburn Memorial Hospital characterized Plaintiff's intellect as "average". (T at 229).

Although Dr. Shapiro noted "borderline intellectual functioning," she did not indicate that Plaintiff demonstrated mental retardation and she described his attention, concentration, and memory as intact. (T at 232).  Dr. Shapiro also indicated that Plaintiff could perform counting, simple calculations, and serial 3s (i.e. counting downwards by threes). (T at 232).  Lastly, while Plaintiff alleged depression, paranoia, and anxiety as disabling conditions in his applications for disability benefits, he did not identify intellectual functioning deficits as a disabling condition. (T at 150, 158).

In light of the foregoing, this Court finds that the "ALJ was not obligated to send plaintiff, who was represented by counsel, for a consultative examination when the facts did not warrant such an examination." Serianni, 2010 WL 786305, at *6; see also Casson v. Astrue, No. 5:10-CV-1537, 2011 WL 6955837, at *8 n. 16 (N.D.N.Y. Nov. 9, 2011).

### b.    Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, Plaintiff argues that his right knee and ankle osteoarthritis should have been considered a severe impairment at step two of the sequential evaluation

process.   In support of this argument, Plaintiff points to his subjective allegations of disabling ankle and knee pain. (T at 150, 230).  In addition, Dr. Howard Amann, a treating provider, noted a "history of right ankle problems" and surgery on Plaintiff's right knee "in the late 1980s" to address a "foreign body in the knee area" following an auto accident. (T at 308).   Dr. Mark Hill, a treating podiatrist, noted a diagnosis of "Rule out osteoarthritis" and recommended decreased activity and an ankle brace. (T at 305).  A December 2008 x-ray of Plaintiff's right ankle revealed an "[o]ld ununited fracture of the lateral malleolus" (i.e. a lower leg bone), but found the ankle to be "otherwise unremarkable." (T at 238).  An April 2009 x-ray of the same ankle found a "small posterior calcaneal spur." (T at 306).

The ALJ summarized the evidence set forth above and concluded that Plaintiff had not established a medically determinable impairment with regard to his right knee. (T at 12). The ALJ further concluded that Plaintiff "failed to bring forth the requisite evidence to establish that there are any residuals of his old right ankle injury that more than minimally limits his ability to perform work-related activity." (T at 12).  This Court finds that the ALJ's decision in this regard was supported by substantial evidence.

During his hearing testimony, Plaintiff described his physical impairments as "probably nothing major . . . ." (T at 44).  Dr. Amann, a treating provider, referred Plaintiff to a podiatrist, but characterized Plaintiff's "orthopedic injuries" as having "not been significant" in terms of his overall condition. (T at 308).  In a follow-up visit, Dr. Amann described Plaintiff as "doing well" and recommended *increased* activity. (T at 307).

Dr. Ganesh, a consultative examiner, noted no muscle atrophy, sensory abnormality, or joint effusion in the lower extremities. (T at 236).  He also assessed full range of motion in the ankles bilaterally and opined that Plaintiff had no "gross physical limitation" as to

10

sitting, standing, or walking." (T at 237).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

As outlined above, the ALJ's conclusion that Plaintiff's ankle/knee issue did not rise to the level of a severe impairment was supported by substantial evidence and should therefore be sustained.

### c.   Listing § 12.04/Treating Physician's Rule

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step

11

3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

Plaintiff contends that his depressive disorder satisfies the paragraph (A) and (B) requirements needed to meet the impairment set forth in Section 12.04 of the Listings (Affective disorders).

Paragraph (A) of the § 12.04 requires, in relevant part, the "[m]edically documented persistence, either continuous or intermittent," of one or more of the following: (1) Anhedonia or pervasive loss of interest in almost all activities; (2) Appetite disturbance with change in weight; (3) Sleep disturbance; (4) Psychomotor agitation or retardation; (5) Decreased energy; (6) Feelings of guilt or worthlessness; (7) Difficulty concentrating or thinking; (8) Thoughts of suicide; or (9) Hallucinations, delusions, or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (A).

The record established that Plaintiff's depressive disorder satisfied the paragraph (A) requirements. Specifically, the record documents increased appetite with weight gain,

12

sleep disturbance, suicide attempts, and feelings of guilt and worthlessness. (T at 198, 206, 226-27, 231, 314).

Thus, the question of whether Plaintiff's impairment meets § 12.04 of the Listings turns on whether he satisfies the paragraph (B) criteria of that Listing.  Paragraph (B) requires a marked limitation in at least two of the following: (1) activities of daily living, (2) maintaining social functioning, (3) maintaining concentration, persistence or pace, or (4) a marked limitation in one domain, combined with repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (B).

The ALJ determined that Plaintiff's impairment did not satisfy the paragraph (B) criteria.  In particular, the ALJ found that Plaintiff had a mild limitation with regard to activities of daily living; no more than moderate difficulties with respect to social functioning; no more than mild difficulties as to concentration, persistence, or pace; and no extended duration episodes of decompensation. (T at 13).  Plaintiff challenges the ALJ's paragraph (B) findings, arguing that he suffers from marked limitations as to all three domains of functioning.[4]

Plaintiff's argument in this regard is based primarily upon the assessment of Dr. Kang, his treating psychiatrist.  In February of 2009, Dr. Kang completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), in which he opined that Plaintiff had a marked limitation with regard to understanding and remembering simple instructions and a moderate limitation in terms of carrying out simple instructions and making judgments on simple work-related decisions. (T at 299).  Dr. Kang further concluded that

---

[4]Plaintiff does not allege that he has suffered multiple episodes of decompensation of extended duration.

Plaintiff had a marked limitation in terms of interacting appropriately with the public and co-workers; a marked limitation with respect to responding appropriately to usual work situations and to changes in a routine work setting; and a moderate impairment with regard to interacting appropriately with supervisors. (T at 300).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, the ALJ did not afford controlling weight to Dr. Kang's assessment.  Rather, the ALJ concluded that Dr. Kang had relied exclusively on Plaintiff's

_____

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

subjective complaints, that his opinion was not supported by his treatment notes, and that his conclusions were contradicted by the balance of the evidence. (T at 15).

Although this Court finds that the ALJ's assessment of Dr. Kang's opinion was flawed, the ALJ's conclusion that Plaintiff's depressive disorder did not meet or equal Listing § 12.04 was supported by substantial evidence.

The Listings define a "marked" limitation as means "more than moderate but less than extreme." "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C).  For the reasons outlined below, substantial evidence supports the ALJ's conclusion that Plaintiff did not have marked impairments as to at least two of the domains, as required under paragraph (B) of Listing § 12.04.

### i.     Activities of Daily Living

Activities of daily living "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C)(1).  The record indicated that Plaintiff engaged in various activities of daily living, such as laundry, vacuuming, and cooking. (T at 35, 130-31).  He used public transportation, shopped, and handled money. (T at 133, 233).  He cared for his chronically ill parents (T at 204). (T at 41).  This evidence was sufficient to sustain the ALJ's conclusion that Plaintiff had only a mild limitation (and

certainly not a marked limitation) as to activities of daily living.

### ii.     Social Functioning

"Social functioning" refers to the claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." It includes " the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C)(2).

Dr. Shapiro, a consultative examiner, indicated that Plaintiff might "have difficulty interacting appropriately with others due to social withdrawal." (T at 233).  As noted above, Dr. Kang opined that Plaintiff had a marked limitation in terms of interacting appropriately with the public and co-workers. (T at 300).

However, the record also indicated that Plaintiff socialized regularly (T at 224), had a girlfriend (T at 40), and "gets along well with friends and family." (T at 233).  T. Harding, the non-examining State Agency review consultant, opined that Plaintiff had moderate difficulties with regard to maintaining social functioning. (T at 259).

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).   This Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's social functioning limitation was moderate - or least less than marked.

### iii.    Concentration, Persistence, or Pace

The domain of maintaining concentration, persistence, or pace, "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C)(3).

Dr. Shapiro opined that Plaintiff might have difficulty "completing some tasks given that he complains of memory and concentration deficits." (T at 233).  She concluded that Plaintiff might find attending to work or maintaining a schedule "difficult due to lack of motivation and lethargy." (T at 233).   Dr. Shapiro also found that Plaintiff did not appropriately manage stress. (T at 233). Dr. Kang opined that Plaintiff had a marked limitation with regard to understanding and remembering simple instructions and a moderate limitation in terms of carrying out simple instructions and making judgments on simple work-related decisions. (T at 299).

The ALJ assessed mild difficulties with regard to concentration, persistence, or pace. (T at 13).  This Court finds that the ALJ's assessment of Plaintiff's limitations in this regard is not supported by substantial evidence.  The ALJ's finding is contradicted by the treating psychiatrist and consultative examiner, as set forth above.  In addition, the State Agency review consultant assessed moderate difficulties with regard to this domain. (T at  259). Although Plaintiff's activities of daily living (e.g. caring for his elderly parents) demonstrate some ability to sustain concentration, persistence, or pace, the medical record clearly establishes significant limitations in this regard.

However, even assuming that the ALJ erred and should have found a marked limitation as to this domain, the ALJ's ultimate assessment with regard to Listing § 12.04

must still be sustained.  Absent repeated episodes of extended duration decompensation,

paragraph (B) of that Listing requires a marked restriction in at least two of the domains.

As such, even if Plaintiff had a marked limitation in terms of concentration, persistence, or

pace; his mental impairment does not satisfy Listing § 12.04 because he does not have

marked restrictions with regard to activities of daily living or maintaining social functioning.

Accordingly, this Court finds no reversible error as to this aspect of the ALJ's decision.

With that said, as will be discussed below, the ALJ's error with regard to the assessment

of Plaintiff's ability to maintain concentration, persistence, or pace materially impacts the

resolution of this matter at a later stage of the sequential evaluation process.

### d.   Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do

despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily,

RFC is the individual's maximum remaining ability to do sustained work activities in an

ordinary work setting on a regular and continuing basis, and the RFC assessment must

include a discussion of the individual's abilities on that basis. A 'regular and continuing

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a

claimant's physical abilities, mental abilities, symptomatology, including pain and other

limitations that could interfere with work activities on a regular and continuing basis. 20

C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence

in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737

F.Supp. 180, 183 (N.D.N.Y.1990).

"The basic mental demands of competitive, remunerative, unskilled work include the

abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

In this case, the ALJ concluded that Plaintiff retained the RFC to (on a sustained basis) understand, carry out, and remember at least simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. (T at 13). This conclusion was not supported by substantial evidence.

Dr. Kang, the treating psychiatrist, opined that Plaintiff had a marked limitation with regard to understanding and remembering simple instructions and a moderate limitation in terms of carrying out simple instructions and making judgments on simple work-related decisions. (T at 299). Dr. Shapiro, the consultative examiner, found that Plaintiff might have difficulty "completing some tasks given that he complains of memory and concentration deficits" and might find attending to work or maintaining a schedule "difficult due to lack of motivation and lethargy." (T at 233). Dr. Shapiro also found that Plaintiff did not appropriately manage stress. (T at 233).

The ALJ appears to have placed great weight on Plaintiff's maintenance of employment as a table "buser" while incarcerated, finding that his performance of that work demonstrated the ability to perform the basic mental demands of unskilled work. (T at 14). However, the ability to perform job-like duties in a highly regimented and structured environment like a correctional facility does not necessarily translate to an ability to satisfy

the demands of competitive, remunerative work on a sustained basis.

Further, the ALJ did not appropriately consider the opinions provided by the treating psychiatrist and psychiatric consultative examiner.  The ALJ afforded great weight to Dr. Shapiro's (the consultative examiner) assessment, finding that it did "not preclude the basic mental demands of unskilled work at the very least." (T at 17).  The ALJ also discounted Dr. Kang's (the treating psychiatrist) opinion, as outlined above.  However, the ALJ did not adequately consider the impact of the two opinions taken together.  In other words, the ALJ found that Dr. Kang's opinion was not supported by treatment records, but he did not account for the fact that the treating psychiatrist's opinion was supported by the consultative examiner's assessment.  Specifically, both professionals concluded that Plaintiff would have serious difficulties with regard to the basic mental demands of work, including management of stress, attending to assigned tasks, and maintaining a consistent schedule.  Take together, these opinions contradict the ALJ's finding that Plaintiff retained the RFC to perform the basis mental demands of unskilled work.

In addition, contrary to the ALJ's assertion, Dr. Kang's assessment was supported by treatment notes in which, for example, Plaintiff was assigned a Global Assessment Functioning ("GAF") score range of 45-50. (T at 309, 311).  "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard v. Halter, 377 F.3d 183, 186 n.1 (2d Cir. 2004).[6]

_____

[6]In the present case, school functioning is not at issue and (as set forth above) the record contains substantial evidence that Plaintiff's social functioning limitations are moderate.  However, there is evidence of marked limitation as to occupational functioning.  Specifically, Dr. Kang found that Plaintiff had a marked limitation with regard to understanding and remembering simple instructions. (T at 299).

Moreover, even if the ALJ has been correct in concluding that Dr. Kang's opinion was inadequately supported by treatment notes, the ALJ erred in failing to consider that Dr. Kang's opinion was consistent with the consultative examiner's assessment with regard to an essential part of the RFC determination, namely, Plaintiff's ability to maintain a work schedule on a regular and continuing basis. See Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999)(noting that an RFC determination requires an assessment as to the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the . . . assessment must include a discussion of the individual's abilities on that basis." . . . "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

In contrast, the ALJ assigned "great weight" to the assessment of the non-examining State Agency consultant.  The consultant, identified as T. Harding, found no significant limitations with regard to performing activities within a schedule and maintaining regular attendance and sustaining an ordinary routine without special supervision. (T at 269). These findings were in direct contradiction to the conclusions of the treating psychiatrist and consultative examiner and the ALJ erred by crediting the non-examining source over Dr. Kang and Dr. Shapiro.  See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence.").

In light of the foregoing, this Court finds that the ALJ's RFC determination is not supported by substantial evidence and should not be sustained.

      **e.**    **Credibility**

Courts in the Second Circuit have determined the claimant's testimony regarding

21

pain and limitations are an important element in disability benefit claims, and such evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the

plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (T at 16).

The ALJ's credibility assessment is flawed and not supported by substantial evidence as it relates to Plaintiff's mental impairment.  The ALJ faulted Plaintiff for the lack of "ongoing psychiatric treatment for his depression." (T at 16).  However, the record

23

includes references to psychiatric hospitalization and treatment, including treatment at Cayuga County Community Mental Health.  (T at 205, 230, 313).

Moreover, even if there was no consistent treatment, faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a "questionable practice." See Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n.6 (E.D.N.Y. Jan. 3, 2008)(noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")(quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.1996) and citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989)).  In this regard, it should be noted that the consultative examiner opined that Plaintiff's judgment and insight were "poor." (T at 232).

Further, Plaintiff's allegations of disabling depression were consistent with the findings of the treating physician (T at 299) and consultative examiner (T at 233).  For the reasons outlined above, the ALJ did not properly assess these opinions and, thus, did not appropriately consider the extent to which they provided support for Plaintiff's allegations. Accordingly, this Court finds that the ALJ's credibility assessment cannot be sustained.

### f.    Failure to Consult Vocational Expert

Plaintiff contends that the ALJ was obliged to consult a vocational expert at step five of the sequential evaluation process.  However, as the Commissioner correctly argues, the ALJ did not reach step five because she concluded at step four that Plaintiff could perform his past relevant work as a cab driver. (T at 17-18).  As a result, if the ALJ's decision could otherwise be sustained, there would have been no error in the failure to consult a vocational expert.  (In other words, if the claimant is found not disabled at step four, there is no need to consult a vocational expert in connection with the step five analysis).

24

However, for the reasons outlined above, the ALJ's analysis with regard to Plaintiff's RFC was flawed and cannot be sustained.  In turn, the ALJ's step four finding that Plaintiff could perform his past relevant work as a cab driver, which was necessarily based on the flawed RFC determination, is not supported by substantial evidence and should not be sustained.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision...." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

In the present case, this Court finds persuasive proof of disability for the reasons outlined in detail above, including the opinions rendered by Dr. Kang (the treating

25

psychiatrist) and Dr. Shapiro (a consultative examiner).  This Court further concludes that a remand for further evidentiary proceedings would serve no purpose. As such, this Court recommends a remand for calculation of benefits.

However, this Court notes that Plaintiff does not appear to be eligible for disability insurance benefits because he was incarcerated pursuant to a felony conviction during the period between the alleged onset of disability (July 4, 2002) and the date last insured (September 30, 2006). See 20 CFR § 404.468 (a)("No monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony.").  As such, it would appear the calculation should be limited to SSI benefits.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   June 29, 2012

      Syracuse, New York

# V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.

§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 29, 2012

Victor E. Bianchini
United States Magistrate Judge